# Exhibit A

| | |
|---|---|
| **In the Matter of the Arbitration Between:** | ) |
| | ) |
| **CATHOLIC MUTUAL RELIEF SOCIETY** | ) **BEFORE** |
| **OF AMERICA** | ) |
| | ) |
| **Petitioner,** | ) **Umpire: David A. Bowers** |
| | ) **Arbitrator: Paul C. Thomson III** |
| **and** | ) **Arbitrator: Howard D. Denbin** |
| | ) |
| **GLOBAL REINSURANCE CORP.** | ) |
| **OF AMERICA F/K/A GERLING GLOBAL** | ) |
| **REINSURANCE CORPORATION OF** | ) |
| **AMERICA, R&Q REINSURANCE** | ) |
| **COMPANY, AND CALVERT INSURANCE** | ) |
| **COMPANY** | ) |
| | ) |
| **Respondents.** | ) |

## AGREED CLAIMS PROTOCOL FINAL AWARD

The Panel in the above-captioned Arbitration, having been properly constituted and accepted by the Parties to this Arbitration – Catholic Mutual Relief Society of America and certain affiliates, including Catholic Mutual Relief Insurance Company of America (collectively, "Catholic Mutual"), on the one hand, and Global Reinsurance Corporation of America f/k/a Gerling Global Reinsurance Corporation of America ("Global Re"), R&Q Reinsurance Company ("R&Q Re") and Calvert Insurance Company, on the other (collectively, "R&Q") – hereby so orders in the form of a Final Award the following Claims Protocol ("Protocol") agreed between the Parties, as further described herein.

This Protocol applies to claims submitted and billed to the reinsurance treaties (the "Treaties") set forth in Exhibit A hereto, effective between January 1, 1971 and December 31, 1981. The various attachment points and layers of the Treaties, as well as participation on those layers by R&Q, are delineated in Exhibit A.

As of the date of the Panel's entry of this Protocol, with respect to all claims billed by Catholic Mutual under the Treaties that assert bodily injury as result of wrongful sexual misconduct, Catholic Mutual, unless otherwise agreed, through the reinsurance intermediary, shall supply R&Q with the following claims information (the "Claims Submission"):

1. A copy of the Declarations Page of all Catholic Mutual Certificates triggered by the claim, and, in the event that the Declarations Page is lost or missing, any "Secondary Evidence" of coverage (including, but not limited to: premium records; claims records; policy registers; correspondence; insurance broker records; renewal records; or any other information regularly used by courts to determine the existence of coverage) used by Catholic Mutual to inform its claim-related business

judgments in connection with the potential for coverage and a copy of the Certificates implicated or potentially implicated by the subject claim (if available), or the terms, conditions and limits under which coverage would or may be provided to Catholic Mutual's insured-member(s) relevant to that claim;

2. A complete copy of any settlement agreement and addendum or exhibits thereto;

3. Proof of payment, including a copy of check(s) or wire transfer confirmation(s);

4. If filed, a copy of the operative complaint or other pleadings that reflect the underlying claimant(s) allegations of abuse and period in which the alleged abuse occurred, otherwise a copy of the claim notice or initial submission made to Catholic Mutual asserting the existence of the claim against its member and the claimant(s) allegations of abuse;

5. To the extent that any confidential or sensitive claims-related information was provided under oath (whether, by deposition, interrogatory or questionnaire) a copy of same, with the understanding that R&Q will agree to keep that information confidential;

6. Information indicating the number of Catholic Mutual Certificates determined by Catholic Mutual, in its judgment and discretion, to have been triggered by the claim;

7. Documentation or information supporting the billing and allocation of defense expense and/or indemnity to the Treaties to the extent Catholic Mutual is not employing a "pro rata, time on the risk" methodology; and

8. If Catholic Mutual's insured-member and/or other insurers or entities contribute towards payment of defense expense and/or indemnity for a particular claim, documentation or information concerning the basis for such contribution so that R&Q can understand the billing and allocation.

Upon receipt of the Claims Submission, the following steps shall govern:

1. R&Q shall pay amounts due in the normal course of business with respect to all claim billings determined to be properly supported and within a period not to exceed 60 (sixty) days of receipt of the Claims Submission from the reinsurance intermediary;

2. In the event further information or documentation is deemed necessary for R&Q's evaluation of a billing, R&Q will issue an inquiry to the reinsurance intermediary within 30 days of receipt of any Claims Submission. Catholic Mutual will then respond to said inquiry within 30 days of its receipt thereof from the reinsurance intermediary. Both R&Q and Catholic Mutual agree to act with utmost good faith in this regard and in accordance with their respective obligations under the Treaties. R&Q shall then, within 30 days of receipt of Catholic Mutual's response to the inquiry, indicate whether said claim is being disputed or paid and, if paid, whether

such payment is full, complete and final *or* subject to a reservation of rights; and

3. In the event R&Q denies a claim or any part thereof and refuses to pay the full amount of the billing, R&Q shall provide Catholic Mutual at the time of denial with a complete statement of the basis and reasons for the denial based on the information provided to R&Q at the time in connection with the subject claim billing and provide Catholic Mutual with an opportunity to cure any defect in any Claims Submission.

With respect to any claim submitted pursuant to this Protocol, Catholic Mutual shall adhere to the notice and reporting provisions of the Treaties and honor its contractual notice and reporting obligations thereunder. R&Q's being bound by this Protocol does not constitute and shall not be construed as a waiver of its rights and remedies under the Treaties' notice and reporting provisions.

By being bound by this Protocol, R&Q does not waive its inspection of records and audit rights under the Treaties.

Each party reserves any and all rights under the Treaties, and as a matter of law and equity, as to any claim submitted pursuant to this Protocol that is disputed by R&Q.

DATED: July _19_, 2021

_____
David A. Bowers, Umpire
For and on Behalf of the Panel

## EXHIBIT A

### A. Treaty Years/Layers

**January 1, 1971 – January 1, 1976 Treaties**

- $80,000 xs $20,000 UNL each and every occurrence (Layer 1)
- $400,000 xs $100,000 UNL each and every occurrence (Layer 2)
- $2.5 million xs $500,000 UNL each and every occurrence (Layer 3)

**January 1, 1977 – January 1, 1981 Treaties**

- $150,000 xs $50,000 UNL each and every occurrence (Layer 1)[1]
- $500,000 xs $200,000 UNL each and every occurrence (Layer 2)
- $2.3 million xs $700,000 UNL each and every occurrence (Layer 3)

### B. Global Re Participation

**1971-1981 Treaties**

**Layer 1**

Global Re's Participation – 10%

**Layer 2**

1971-1976 Treaties – Global Re's Participation – 11%

1977-1980 Treaties – Global Re's Participation – 10%

Global Re did not participate on Layer 2 of the 1981 Treaty.

**Layer 3**

1971-1973 Treaties – Global Re's Participation – 4.25%

1974-1976 Treaties – Global Re's Participation – 1.5%

1977 Treaty – Global Re's Participation – 2%

1978-1980 Treaties – Global Re's Participation – 2.5%

Global Re did not participate on Layer 3 of the 1981 Treaty.

### C. R&Q Re's Participation Via the Original Newark Re Pool Participants

**1971-1974 Treaties**

1971 Treaty:  Layer 2 (3.05%); Layer 3 (1.4%)

1972 Treaty:  Layer 2 (4.16%); Layer 3 (1.91%)

1973 Treaty:  Layer 2 (6.93%) Layer 3 (1.25%)

1974 Treaty:  Layer 2 (15%); Layer 3 (6.5%)

CH2:25034772.1

---

[1] With respect to the 1981 Treaty, the limits and attachment points of the first layer are $200,000 xs $50,000 UNL.

# Exhibit B



*In the Matter of the Arbitration Between*

|  |  |
|---|---|
| | ) |
| | ) |
| Catholic Mutual Relief Society of America | ) |
| ——————————————————————— | ) |
| Petitioner, | ) |
| - and - | ) |
| | ) |
| | ) |
| Global Reinsurance Corporation of America | ) |
| f/k/a Gerling Global Reinsurance Corporation of America | ) |
| R&Q Reinsurance Company, and | ) |
| Calvert Insurance Company | ) |
| ——————————————————————— | ) |
| Respondents. | ) |

*Before:*

Umpire: David A. Bowers
Arbitrator: Paul C. Thomson
Arbitrator: Howard D. Denbin

## CONFIDENTALITY AGREEMENT
## AND PROTECTIVE ORDER

1.     The Petitioner and Respondents (as hereinafter defined, also referred to as "parties") intending to be bound by this Confidentiality Agreement and Protective Order ("Agreement and Order") are:

      a.     The Catholic Mutual Relief Society of America and its parent corporation, subsidiaries, affiliates, agents (including counsel and counsel's law firm in this Arbitration), employees, officers and directors ("Petitioner").

      b.     Global Reinsurance Corporation of America f/k/a Gerling Global Reinsurance Corporation of America, R&Q Reinsurance Company, and Calvert Insurance Company (collectively "R&Q") and their parent corporations, subsidiaries, affiliates, agents (including counsel and counsel's law firm in this Arbitration), employees, officers and directors ("Respondents").

2.     Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, it is agreed and ordered that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, the result and all other terms of the final award and any interim decisions, and all correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as

"Arbitration Information"), whether generally or specifically, will be kept confidential and not disclosed or characterized.

3. Disclosure of Arbitration Information may be made:

    a. as is necessary to obtain compliance with the interim decisions or the final award issued in this arbitration, or to secure payment from reinsurers or retrocessionaires of amounts at issue in or incurred for this arbitration;

    b. as is necessary in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify, vacate or enforce an award issued in this arbitration;

    c. as is necessary in communications with auditors retained by any party, or federal or state regulators;

    d. as is necessary to comply with subpoena, discovery requests or orders of any arbitral authority (i.e., a single arbitrator or panel) or court;

    e. as is necessary in any future arbitration proceedings between the parties, provided the arbitration authority in the future arbitration proceeding:

        (1) has been convened under the same reinsurance agreements at issue in this Arbitration; and/or

        (2) requires disclosure for good cause shown.

    f. to the extent Arbitration Information is already lawfully in the public domain.

Any disclosures pursuant to subparagraphs (a) (compliance/payment) and (c) (auditors/regulators) shall be accompanied by a copy of this Agreement and Order and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b) (court proceedings), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed and/or redacted so as to limit disclosure of Arbitration Information. If a party is requested or required under subparagraph (d) (subpoenas/discovery requests) to disclose Arbitral Information, the procedures as further outlined in paragraph 5 shall govern.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

    a. the Arbitration Panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b. counsel for a party or employees of counsel's law firm who are assisting counsel;

2

c.  employees and agents of the parties for purposes consistent with this Agreement and Order;

d.  any party's deposition or trial witness;

e.  any person retained by counsel for a party to assist in this arbitration, including court reporters or videographers arranged by any party; provided, however, that such persons shall agree to be bound by the terms of this Agreement and Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an Acknowledgment in the form attached hereto as Exhibit A; or

f.  any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Agreement and Order as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an Acknowledgement in the form attached hereto as Exhibit A.

5.  If a party is requested or required to disclose Arbitration Information pursuant to subpoenas/discovery requests as referenced in paragraph 3, subject to applicable legal restrictions, that party will:

a.  Notify the other party(ies) in writing as soon as possible after the subpoena, request or arbitral or court order is received, to permit the other party(ies) to seek legal protection against any such disclosure; and

b.  Tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand.

Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or arbitral court order to the extent required by law. If requested by any other party(ies), the obligated party will cooperate (at the expense of the requesting other party(ies)) in the defense of a demand.

6.  The parties have agreed to use all reasonable methods to protect the data and other information in this proceeding from cyber breaches. Any breach or loss of data as a result of a cyber breach shall be reported to the other party(ies) as soon as reasonably possible, so that appropriate remediation measures may be undertaken.

7.  This Agreement does not supersede, but instead supplements, any existing confidentiality or nondisclosure agreement or order that applies to the parties with respect to documents and information in this arbitration. The existing agreements include, but are not limited to, the Nondisclosure Agreement between Petitioner and Respondents, dated February 27, 2019.

3

8.     The parties recognize that, in addition to any injury which may result in damages, serious, immediate or irreparable harm not compensable by actual or liquidated damages will result to any party and its business if the other party breaches its obligations under this Agreement and Order. Therefore, each party agrees that all parties will be entitled to see a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement and Order, in addition to any other remedies and damages that would be available at law or equity. Further, nothing in this paragraph shall prohibit the Arbitration Panel, prior or coincident to issuing its final order or final award, from ordering appropriate relief to any party aggrieved by a breach of this Agreement and Order by the other party.

9.     This Agreement and Order shall survive the termination of the arbitration and any subsequent legal proceedings related thereto.


AGREED:

_____ for Catholic Mutual Relief Society of America, Petitioner

_____ for Global Reinsurance Corporation of America f/k/a
                                 Gerling Global Reinsurance Corporation of America, R&Q
                                 Reinsurance Company, and Calvert Insurance Company,
                                 Respondents


SO ORDERED:

Members of the Arbitration Panel:

Arbitrator:        _____

(Printed Name) _____


Arbitrator:        _____

(Printed Name) _____


Umpire:          _____

(Printed Names) _____

4

Dates: _____

# EXHIBIT A

*In the Matter of the Arbitration Between*

| | |
|---|---|
| Catholic Mutual Relief Society of America | )<br>)<br>)<br>)<br>) |
| Petitioner, | ) |
| - and - | )<br>)<br>) |
| Gerling Global Reinsurance Corporation of America,<br>R&Q Reinsurance Company, and<br>Calvert Insurance Company | )<br>)<br>)<br>) |
| Respondents. | ) |

*Before:*

Umpire: David A. Bowers
Arbitrator: Paul C. Thomson
Arbitrator: Howard D. Denbin

# ACKNOWLEDGEMENT

_____ states as follows:

1.      I live at _____

2.      I am employed as (position)_____by (name and address of employer), _____

3.      I am aware that the parties to *In the Matter of the Arbitration Between Catholic Mutual Relief Society of America* and *Gerling Global Reinsurance Corporation of America, R&Q Reinsurance Company, and Calvert Insurance Company* have agreed to, and the Arbitration Panel has executed, a Confidentiality Agreement And Protective Order dated _____ ("Agreement And Order").  I have received and  read a copy of that Agreement And Order.

4.      I agree to review and otherwise use the material produced in the instant arbitration by

_____

only under supervision of a party's counsel and only in connection with this particular arbitration.

5.      I agree that I am bound by the terms of the Agreement And Order as though I were a party to the arbitration, and I will not disclose or discuss material produced by _____

6

_____

or_____to
or with any person other than those permitted access to such material under the Agreement And
Order.


(Signature) _____


(Printed Name) _____


Witnessed:

                              Party:


                              By: _____

7

# Exhibit C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA | ) ) ) |
| Petitioner, | ) ) ) |
| against | ) ) ) |
| GLOBAL REINSURANCE CORPORATION OF AMERICA F/K/A GERLING GLOBAL REINSURANCE CORPORATION OF AMERICA, R&Q REINSURANCE COMPANY, AND CALVERT INSURANCE COMPANY | ) ) ) ) ) ) |
| Respondents. | ) ) |

**[PROPOSED] JUDGMENT**
**CONFIRMING ARBITRATION AWARD**

WHEREAS, on July 28, 2021, Petitioner Catholic Mutual Relief Society of America, filed a Petition seeking to confirm a final arbitration award obtained in the underlying arbitration involving Respondents, Global Reinsurance Corporation of America f/k/a Gerling Global Reinsurance Corporation of America, R&Q Reinsurance Company, and Calvert Insurance Company, collectively, "R&Q,";

WHEREAS, Catholic Mutual's Petition is based upon the Federal Arbitration Act, 9 U.S.C. § 9;

WHEREAS, this Court has considered all of the papers filed in connection with the Petition;

NOW, THEREFORE, judgment is entered in this action as follows:

1.  That this Court has jurisdiction over the confirmation proceeding; and

2.  That the Final Award issued by the arbitrators dated July 19, 2021, is binding and valid, and hereby confirmed, there being no ground in law or equity for the Agreed Claims Protocol Final Award (the "Final Award") to be modified or vacated; and

3.  That Catholic Mutual and R&Q shall comply with the terms of the Final Award in every respect; and

4.  That this Judgment shall constitute a final resolution of this action on the merits; and

5.  Each party shall bear its own costs and expenses.

SO ORDERED this _____ day of _____ 2021.

CH2:25090320.1

2